AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District | |
|---|---|---|
| | EASTERN DISTRICT OF LOUISIANA | |
| Name<br><br>PATRICK MCCLENDON | Prisoner No.<br><br>106727 | Case No.<br><br>**14-1248** |
| Place of Confinement<br><br>LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA | | **SECT. MAG. 5** |

| Name of Petitioner (include name under which convicted) | | Name of Respondent (authorized person having custody of petitioner) |
|---|---|---|
| PATRICK MCCLENDON | V. | N. BURL CAIN, Warden |

The Attorney General of the State of: LOUISIANA

PETITION

1.  Name and location of court which entered the judgment of conviction under attack

    22nd Judicial District, Parish of Washington, State of Louisiana.

2.  Date of judgment of conviction      **April 15, 1995**

3.  Length of sentence      **Life.**

4.  Nature of offense involved (all counts)      **Second Degree Murder**

5.  What was your plea? (Check one)

    (a) Not guilty      |X|

    (b) Guilty      | |

    (c) Nolo contendere      | |

    If you entered a guilty plea to one count or indictment, and not guilty to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)

    (a) Jury      |X|

TENDERED FOR FILING

MAY 27 2014

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

____Fee _____
____Process _____
X_Dktd _____
____CtRmDep _____
____Doc. No. _____

AO 241   (Rev. 5/85)

(b) Judge only

7.   Did you testify at trial?

Yes    No    X

8.   Did you appeal from the judgment of conviction?

Yes   X No

9.   If you did appeal, answer the following:

(a) Name of court    First Circuit Court of Appeals

(b) Result   Denied

(c) Date of result and citation, if known    *State of Louisiana v. Patrick McClendon*, 686 So.2d 177,  12/20/96

(d) Grounds raised   See Attached Exhibits

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court   Louisiana Supreme Court

(2) Result   Denied

(3) Date of result and citation, if known    *State of Louisiana v. Patrick McClendon*, 695 So.2d 1352,  6/20/97

(4) Grounds raised    Same as on Direct Appeal

(f)  If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes   X No

11.   If your answer to 10 was "yes," give the following information:

AO 241    (Rev. 5/85)

(a) (1) Name of court    22nd Judicial District Court

(2) Nature of proceeding        Application for Post Conviction Relief

(3) Grounds raised        See Attached exhibits

_____

_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes  |  No  |  X

(5) Result    Denied

(6) Date of result    See Attached Exhibits

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Name of proceeding _____

(3) Grounds raised _____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes  |  No  |  X

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction over the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes  | X | No  |

(2) Second petition, etc.        Yes  |  No  |

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

AO 241   (Rev. 5/85)

12.   State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the facts supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.
      Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) trough (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)  Denial of effective assistance of counsel.

(j)  Denial of right of appeal.

A.   Ground one:  **Petitioner's Constitutional Right to Confrontation**


Supporting FACTS (state *briefly* without citing cases or law):          **See Attached: Memorandum in Support**


B.   Ground two:  **Petitioner's Constitutional Rights to Due Process, Confrontation, & Prosecutorial**


Supporting FACTS (state *briefly* without citing cases or law):          **See Attached: Memorandum in Support**

AO 241   (Rev. 585)

_____

C.   Ground three: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

D.   Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

13.   If any of the grounds listed in 12 A, B, C, and D were not previously presented in any other court, state or federal, state

      *briefly* what grounds were not so presented, and give your reasons for not presenting them:   **All of these claims were
      exhausted on State Court
      Level**

      **were properly exhausted through the state Court system**

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

      Yes ____ No   |X|

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment
      attacked herein:

      (a)   At the preliminary hearing   **John Simmons**

      _____

      (b)   At arraignment and plea   **John Simmons**

      _____

      (c)   At trial   **John Simmons**

      _____

AO 241   (Rev. 5-85)

(d)   At sentencing        John Simmons

_____

(e)   On appeal            Louisiana Appellate Project

_____

(f)   In any post-conviction proceeding        In Pro Se

_____

(g)   On  appeal  from  any  adverse  ruling  in  a  post-conviction   In Pro Se
proceeding

_____

16.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes  |__ No       |X

17.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes  |__ No       |X

(a)   If so, give name and location of court which imposed sentence to be served in the future:   _____

_____

(b)   Give date and length of the above sentence:

_____

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes  |__ No       |X

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

None

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_____
5/23/14

Date

_____
Signature of Petitioner

**RECEIVED**

MAY 27 2014

Legal Programs Department

Patrick McClendon #106727
Camp C, Bear-2
La. State Penitentiary
Angola, LA 70712

5/23/14

SCANNED at LSP and Emailed
5/27/14   by   OM   ,   16μ   pages
date         initials   No.

Clerk's Office
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-151
New Orleans, LA 70130

**RE: Patrick McClendon vs. N. Burl Cain, Warden, Civil No. 11-31023.**

Dear Clerk:

　　Please find enclosed an Original of my pro se *Petition for Federal Habeas Corpus (28 U.S.C. § 2254), and accompanying Memorandum of Law in Support with attached exhibits* in the above referenced civil matter. I respectfully ask that you please file same into the docket of this court for judicial consideration and disposition. Furthermore, please find my application for in pauper status. Should it be determined that I am required to pay the $5.00 filing fee, kindly submit such a notice and allow me not more than thirty (30) days by which to submit funds from my inmate account. Your cooperation and time in this matter are greatly appreciated.

Respectfully,

*Patrick McClendon # 106727*

Patrick McClendon #106727

pcm/jbc#101675
Enclosures (3)
cc:　w/encl. District Attorney, Washington Parish

TENDERED FOR FILING

MAY 27 2014

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

## PATRICK MCCLENDON

## VERSUS

## N. BURL CAIN, WARDEN

On Petition For Federal Habeas Corpus Pursuant To 28 U.S.C. § 2254;
From the 22nd Judicial District Court, Parish of Washington, State of Louisiana,
Docket Number: 93-CR1-54452, Division "E" Honorable Judge Burris

Respectfully submitted this 23rd day of May, 2014.

Patrick McClendon #106727
Camp C, Bear-2
La. State Penitentiary
Angola, La. 70712

## CIVIL PROCEEDINGS

1

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................i

TABLE OF AUTHORITIES...............................................................................ii, iii

PROCEDURAL HISTORY......................................................................................1

STATEMENT OF THE FACTS..............................................................................4

CLAIM #1...............................................................................................................7

CLAIM #2.............................................................................................................10

CONCLUSION .....................................................................................................30

CERTIFICATE OF SERVICE..............................................................................30

EXHIBITS..........................................................................................................End

## TABLE OF AUTHORITIES

**U.S. Constitutional Provisions**

*28 U.S.C.A. § 2244(d)(1)*............................................................................................7

*28 U.S.C.A. § 2244(d)(2)*............................................................................................7

*28 U.S.C.A. § 2254*.............................................................................................1, 2

*28 U.S.C.A. § 2255*............................................................................................17

*U.S. Const. Amend. 6*............................................................................................18

*U.S. Const. Amend. 14*............................................................................................18

**Federal Cases**

*Arizona v. Fulminante,* 499 U.S. 279, 307, 309, 111 S.Ct. 1246 (1991)........................12

*Artuz v.Bennett,*121S.Ct.361,(2000)............................................................................7

*Baldwin v. Reese,* 124 S.Ct. 1347 ( 2004)........................................................................2

*Bracy v. Gramley,* 520 U.S. 899, 909, 117 S.CT. 1793 (1997)......................................30

*Brady v. Maryland*, 373 U.S. 83, 83 S.CT. 1194, 10 L.Ed.2d 215 (1963).............21,24,28

*Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604,1611, (1998)....................16

*Carey v. Saffold,* 122 S.Ct. 2134,(2002)............................................................................8

*Chapman v. California,* 87 S.Ct. 824 (1967).....................................................................12

*Corwin v. Johnson,* 150 F.3d 473 (5th Cir. 1998)............................................................16

*Crawford v. Washington* 541 U.S. at 51, 124 S.Ct. 1354..................................................9

*Donnelly v. DeChristophoro,* 416 U.S. 637, 643, 94 S.CT. 1868,(1974).......................23

*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)....................13

*Giglio v. United States,* 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).............14,28

*Greer v. Miller,* 483 U.S. 756, 765, 107 S.CT. 3102, 97 L.Ed.2d 618 (1987)..................23

*Kutzner v. Johnson,* 242 F.3d 605, 609 (5th Cir. 2001)....................................................22

*Kyles v. Whitley,* 514 U.S. 419, 115 S.CT. 1555, 131 L.Ed.2d 490 (1995)....................26

*Melendez–Diaz v. Massachusetts,* 129 S.Ct. 2527 (2009)...........................................7,8,10

*Olmstead v. United States*, 277 U.S. 438, 484, 48 S.Ct. 564 (1928)..............................31

*Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)..........................9

*Schlup v. Delo,* 513 U.S. 298, 327, 130 L.Ed.2d 808, 115 S.Ct. 851 (1995)..............15,16

*Strickler v. Greene,* 527 U.S. 263, 119 S.CT. 1936, 144 L.Ed.2d 286 (1999)...........25,26

*Sullivan v. Louisiana,* 508 U.S.275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)..............13

*United States v. Agurs,* 427 U.S. 97, 96 S.CT. 2392, 49 L.Ed.2d 342 (1976).......11,24,29

*United States v. Bagley,* 473 U.S. 667, 675, n.6, 105 S.Ct. 3375 (1985)..............22,25,31

*Vasquez v. Hillary,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)......................13

*Walter v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).......................13

*Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)...............................................................16

*Williams  v. Taylor,* 120 S.Ct. 1495, 529 U.S. 362 (2000).................................................8

*Yarborough v. Alvarado,* 124 S.Ct. 2140, 541 U.S. 652 (2004)........................................8

La. Statutes

*La.C.Cr.P. art. 930.4 A*...................................................................................................12

*La.C.Cr.P. Art. 930.3(1)*.................................................................................................12

*La.C.Cr.P. art. 924, et seq.*.............................................................................................12

La. Cases

*Carlin v. Cain,* 706 So.2d 968(La. 1998)........................................................................11

*State v. Bailey,* 367 So.2d 368 (La. 1979)......................................................................28

*State v. Terry,* No. 84-KP-0594 (La. 10/15/84), 458 So.2d 97, 100....................................11

*State v. Chapman,* 410 So.2d 689.....................................................................................10

*State v. Knapper,* 579 So. 2d 956 (La.1991).....................................................................24

*State of Louisiana v. Shannon,* 360 So.2d 193...............................................................10

*State of Louisiana v. Knapper,* 555 So.2d 1335, (1990)................................................10

*State v. Orman,* 925 So.2d 761 (2nd Cir. 3/16/06).........................................................11

*State v. Johnson,* 664 So.2d 94 (La.1995)......................................................................12

Other

*LSA-C.E. Arts. 609*..........................................................................................................18

*LSA-C.E. Arts. 609.1*.......................................................................................................18

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PATRICK MCCLENDON                    CIVIL ACTION

                                     NUMBER:

-Versus-                             _____

                                     JUDGE:

N. BURL CAIN, Warden                 MAGISTRATE:

## MEMORANDUM OF LAW IN SUPPORT
## OF PETITION FOR FEDERAL HABEAS CORPUS

MAY IT PLEASE THE COURT:

NOW INTO COURT comes Patrick McClendon, *pro se* Petitioner, who respectfully presents his "Memorandum of Law in Support of Petition for Federal Habeas Corpus"; and who respectfully prays this Honorable Court will accept and consider same in connection with his "Petition for Federal Habeas Corpus", pursuant to *28 U.S.C.A. § 2254.*

## PROCEDURAL HISTORY

Petitioner and co-defendant, Anthony M. Bell were charged by grand jury indictment with first degree murder, in violation of *La. R.S. 14:30.* They pled not guilty and after trial by jury, were found guilty of the responsive offense of second degree

2

murder, a violation of *La. R.S. 14:30.1* both men received the mandatory sentence of life without benefit of parole, probation, or suspension of sentence, with credit for time served, in docket no. 93-CR1-54452, Division "E" of the Twenty Second Judicial District Court. Petitioner then appealed to the First Circuit Court of Appeal in docket no. 96-KA-0581 and was denied on December 20, 1996. *State of Louisiana v. Patrick McClendon,* 686 So.2d 177. Petitioner then sought writs in the Louisiana Supreme Court and was denied on June 20, 1997 in *State of Louisiana v. Patrick Cassius McClendon,* 695 So.2d 1352. Petitioner then executed a Motion for Contradictory Hearing under *LSA C.Cr.P. art. 822* where he sought to be provided with a copy of the prosecutor's file. A hearing on that Motion went forward on November 12, 1999, following which the trial court ordered the prosecutor to provide Petitioner with a copy of original and supplemental police reports and the statements of witnesses who testified at trial and that the Clerk of Court to provide Petitioner with a copy of his sentencing transcript and any motions filed on his behalf. The initial statement of Roderick Earl Johnson was not included in this file. The Clerk complied with the trial court's order as evidenced by his transmittal letter of November 24, 1999. On May 31, 2000 Petitioner then filed an application for post-conviction relief. The application was denied on July 10, 2000. Petitioner then sought writs to the First Circuit Court of Appeal and the Louisiana Supreme Court which was denied in *State ex rel. McClendon v. State,* 811 So.2d 902 (La. 2002). Petitioner then filed for a Petition for Habeas Corpus on March

3

25, 2003 which was dismissed with prejudice on January 9, 2004. Petitioner now raises a Sixth Amendment Violation from the recently decided case of *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009) and with new information obtained by Pierce & Associates concerning State's key witness Dorothy Jo Mallard, and the initial Taped Statement from Roderick Johnson, this information was obtained through a elven month investigation with letters received in January 15, 2009, March 25, 2009 and January 26, 2010, by Jackson Pierce & Associates and it was found that two of the state's witnesses, were both given deals of leniency and that the original statement of Rodderick Johnson were all withheld from petitioner.

The United States Court of Appeals for the 5th Circuit granted petitioner permission in Docket No. 11-31023, **IN RE: PATRICK MCCLENDON.**

Petitioner was denied permission to proceed with an erroneous Report and Recommendation, Adopted by the Eastern District Court in **Patrick McClendon v. Burl Cain, Warden, USDC No. 13-30667.**

Petitioner was denied acceptance by the Eastern District Court Magistrate and Judge for a Successive Petition, in which petitioner was granted permission to file this successive petition by the United States Court of Appeals for the 5th Circuit in Docket No. 11-31023 **IN RE: PATRICK MCCLENDON.** (See Exhibit A – Attached)

Petitioner is now requesting this Honorable Court to consider this pleading as timely and give petitioner a ruling on the merits of his claims. Actual Innocence is an

4

exception to procedural default and petitioner is actually innocent of this conviction.

Petitioner now files this Third Habeas Corpus petition on May 23, 2014.

## STATEMENT OF THE FACTS

On the day in question it was stated that Patrick McClendon drove his car from Columbia, Mississippi with co-defendant Nevil Watts and Dorothy Mallard as passengers. Once in Bogalusa, Louisiana, Michael Myers was spotted by Dorothy Mallard. Afterwards, Myers got into the car with the suspects.

Meyers was shot and killed. Mallard testified that the shots were fired by McClendon, with a small weapon, and Watts, with a larger one. However, the witnesses from the neighborhood did not see either of the alleged perpetrators inside the car. More significantly, one witness by the name of Audrey Martin testified that Mallard jumped from the car right behind the victim and shot the victim. Police located the vehicle in Columbia, Mississippi. The next day, near the house where petitioner was residing with his pregnant girlfriend. Monica Page, the girlfriend said that petitioner did not leave the house between his arrival the night before and when he was arrested. A few days later, on December 17, 1992, the police searched the trailer where petitioner lived with his brother and uncle. Peter McClendon, who lived in the house next to the trailer and Mary McClendon, Mother of petitioner, who lived in the house next to the trailer, both of whom saw Mallard go to the trailer before police went and searched the trailer. The police during the search, found a small caliber weapon in the trailer that Dorothy

5

Mallard could have planted there. However, testing revealed that it was the same weapon used to shoot the victim.

The only witness who testified petitioner fired the alleged shots which killed Michael Meyers was Dorothy Mallard. All other crime witnesses reported the shots were fired by a black female. More significantly, eyewitness Audrey Martin, testified that Dorothy Mallard was the black female suspect that shot the victim in question. In the initial taped statement from Roderick Johnson, he stated that the black female shot the victim, however, at trial he changed his initial statement as a prosecution witness against Petitioner.

### FEDERAL QUESTIONS PRESENTED

**1. Petitioner's Conviction Violated the United States Constitutional Confrontation Clause in allowing the Coroner to Testify over Defense Counsel's Objection, Denying Petitioner his Rights to Due Process & Confrontation.**

**2. Petitioner's Conviction Violated the United States Constitution, the Louisiana Constitution of 1974 and Clearly Established Federal and State Jurisprudence When the Prosecution Withheld Evidence of the Deal of Leniency/Immunity Made with Witness Dorothy Jo Mallard for Her Testimony Against Petitioner, and for the Prosecution Withholding Evidence of the Deal of Leniency/Immunity Made with Witness Roderick Earl Johnson for His Trial Testimony, in Violation of Petitioner's Rights to Due Process of Law, Fair Trial, Confrontation and Right to Cross-examination, and Which Would Prove Petitioner Actually Innocent.**

### TIMELINESS OF THIS PETITION

A 1-year period of limitation shall apply to an petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period

shall run from the latest of (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *28 U.S.C.A. § 2244(d) (2)*. *Artuz v. Bennett*, 121 S. Ct. 361, 531 U.S. 4 (2000); *Carey v. Saffold*, 122 S. Ct. 2134, 536 U.S. 214 (2002).

## STANDARD OF REVIEW

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *28 U.S.C.A. § 2254(d)(2)*. *Williams v. Taylor*, 120 S. Ct. 1495, 529 U.S. 362 (2000); *Yarborough v. Alvarado*, 124 S. Ct. 2140, 541 U.S. 652 (2004).

This petition is based on claims which resulted in decisions that are contrary to clearly established federal law, and are based on an unreasonable determination of the facts in light of the "newly discovered evidence" that Petitioner attempted to present in

7

State Court proceedings, that would prove Petitioner is actually innocent of second degree murder based on the evidence.

### Claim #1

**Petitioner's Conviction Violated the United States Constitutional Confrontation Clause in allowing the Coroner to Testify over Defense Counsel's Objection, Denying Petitioner his Rights to Due Process & Confrontation.**

Petitioner, Patrick McClendon submits this claim based upon a new ruling of law governing Confrontation based upon the New ruling in *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009) where the United Supreme Court held that

*(1) analysts certificates of analysis were affidavits within core class of testimonial statements covered by Confrontation Clause;*

*(2) analysts were not removed from coverage of Confrontation Clause on theory that they were not "accusatory" witnesses;*

*(3) analysts were not removed from coverage of Confrontation Clause on theory that they were not conventional witnesses;*

*(4) analysts were not removed from coverage of Confrontation Clause on theory that their testimony consisted of neutral, scientific testing;*

*(5) certificates of analysis were not removed from coverage of Confrontation Clause on theory that they were akin to official and business records; and*

*(6) defendant's ability to subpoena analysts did not obviate state's obligation to produce analysts for cross-examination.*

8

In the case at hand Petitioner's counsel objected at trial during cross-examination of Dr. **Roger Casama** the coroner of Washington Parish who testified at trial that he is an expert in the field of forensic medicine. T.Tr.P. 18, Lines 25,25..

On T.Tr.P. 20, Lines 28-32, defense counsel objected to this doctor making conclusions concerning the autopsy when he in fact was not the doctor who performed the autopsy. All Dr. Roger Casama did was pronounce the victim dead. T.Tr.P. 21. Lines 8-15, the defense again objected on another ground, that they were being denied the right to confront the person who performed the autopsy. Then, when questioned about the immediate cause of death, the defense counsel again objected as Dr. Casama was testifying about what another doctor saw. T.Tr.P. 21, Lines 29-32.

On T.Tr.P. 23, Lines 14-21, the defense objected to the fact that Dr. Casama made a fecitation and testified as to a report that he did not do, therefore denying the defense the opportunity to confront a crucial witness.

In *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009), the objections feel within the core class of testimonial statements governed by the confrontation clause.

Similarly here, Petitioner's counsel objected to all the trial testimony of Dr. Casama for being second hand information and denying the defense of the opportunity to confront a crucial witness.

Under *Crawford*, a witness's testimony against a defendant is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior

opportunity for cross-examination. 541 U.S. at 54, 124 S.Ct. 1354.

The testimony in the instant case was from a report done by a person different than the person testifying. Dr. Casama was merely testifying to what someone else discovered and could in no way satisfy the Sixth Amendment Confrontation Rights afforded to the Petitioner.

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides that "...[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him..." in *Crawford*, after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those "who bear testimony" against him. 541 U.S. at 51, 124 S.Ct. 1354. A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. Id,. At 54, 124 S.Ct. 1354.

Simply put, in a case such as this, where two witnesses right after the shooting, state that they saw the victim get out of the car, and then saw a female exit the car and shoot the victim. The prosecution's theory was that the shot came from within the car and after getting Roderick Johnson to change his initial statement, (See: Exhibit "D" where he stated that he saw the woman shoot the victim) to say that he heard a shot fired after the victim and a female exited the car. The 911 caller, Ms. Audrey Martin stated

10

that she saw the female shoot the victim in his back or in his side. T.Tr.P. 183 & 184 Lines 9-12. The autopsy results concerning the direction and path of the bullet that hit the victim is very relevant in this case, as it would have proven exactly where the gun was fired from. Petitioner assert having the opportunity to cross-examine the actual performer of the autopsy would have proven his actual innocence in this crime. Denying Petitioner the opportunity to cross-examine the person who performed this autopsy denies his right to confrontation.

Additionally, Petitioner in this case appealed these violations of confrontation to the appellate courts and was not given any relief due to the jurisprudence that governed confrontation at that time, however do to the "New Ruling" in *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009) which now gives Petitioner his right to have this Violation of his Constitutional Rights Corrected.

## CLAIM #2.

**Petitioner's Conviction Violated the United States Constitution, the Louisiana Constitution of 1974 and Clearly Established Federal and State Jurisprudence When the Prosecution Withheld Evidence of the Deal of Leniency/immunity Made with Witness Dorothy Jo Mallard for Her Testimony Against Petitioner, and for the Prosecution Withholding Evidence of the Deal of Leniency/immunity Made with Witness Roderick Earl Johnson for His Trial Testimony, in Violation of Petitioner's Rights to Due Process of Law, Fair Trial, Confrontation and Right to Cross-examination, and Which Would Prove Petitioner Actually Innocent.**

Petitioner, Patrick McClendon submits this claim based on newly discovered evidence, evidence unknown to him or the Court of Appeal, at the time of review. First this claim is predicated under two Louisiana Supreme Court cases, *State v. Orman*, 925

11

So.2d 761 (2nd Cir. 3/16/06) and *Carlin v. Cain*, 706 So.2d 968(La. 1998), which states the exception to *La.C.Cr.P. art. 930.8(A)(1)*.

The fact alone that the District Court failed to even give the Petitioner an opportunity to expand the record with an evidentiary hearing in this case warrants reversal. Petitioner has shown that this "material" was not known to him or his counsel before trial or appeal. It should also be noted that the factual predicate for this claim could not have been discovered previously through the exercise of due diligence, and the facts underlying this claim should establish that any rational jurist of reason would have found the petitioner not guilty of second degree murder.

Petitioner also contends that his conviction *was obtained in violation of the Constitution of the United States and the State of Louisiana. La.C.Cr.P. Art. 930.8 A(1) & La.C.Cr.P.Art. 930.8 A(2)*, sets forth the procedural requirements this Court is to take into consideration when deciding whether or not to entertain a Petitioner's Habeas Corpus Petition.

Petitioner's attorney filed a Motion for Discovery and asked about any rap sheets or prior criminal history for any of the state's witnesses, which the state informed him that none of their witnesses had any rap sheets nor records. This was incorrect as Roderick Earl Johnson did in fact have an open charge, which the prosecution gave him a deal to testify against Petitioner and his co-defendant. See: *Exhibit "A"*.

Petitioner's  failure to discover this evidence was not due to any lack of diligence.

12

It is material, and it is highly probable that this evidence would have produced a different verdict, had the jury been allowed to hear the evidence. Notwithstanding the probability of a different verdict, *McClendon was denied a fair trial*. The evidence of the deal with Dorothy Jo Mallard was discovered on March 25, 2009. See *Exhibit "A"* a letter from Pierce & Associates showing that the charges were not prosecuted by the district attorney's office in exchange for her testimony against petitioner, and arrest register showing that Dorothy Jo Mallard was arrested on these charges, and *Exhibit "A"* another letter from Pierce & Associates that show that Roderick Earl Johnson was given probation for his crimes to change his initial statement for a prosecution favorable testimony in order to obtain a conviction. See: *Exhibit "B"* the initial statement from Roderick Earl Johnson and his trial testimony Pages 130-135, which was withheld from the Petitioner and his defense counsel. All of this information was obtained from Pierce and Associates. The original statement is in total conflict with his trial testimony and will be proven in this claim. Again, this shows that Dorothy Jo Mallard and Roderick Earl Johnson had every thing to gain from giving false and perjured testimony. She was identified as the shooter by an eye witnesses, both Audrey Martin and Roderick Johnson. The prosecution was very selective and careful in questioning Dorothy Jo Mallard and Roderick Earl Johnson as to not let the truth out about her role in this crime, and about what he actually saw in order to seek convictions of both petitioner and his co-defendant.

13

In Roderick Earl Johnson's initial taped statement to police he stated that "they must have shot him in the car because he jumped out and the woman got out of the car and shoot him." "You saw the woman shoot him?" "I saw the woman, I saw the back." he also stated that the car was burgundy with tinted windows and the drivers window was up so he would have been unable to see who was driving the car. He additionally stated that he only heard "one shot". He stated that when he (the victim) had got out of the car and that woman got out of the car and shot him." He stated that the driver of the car was light or red skinned black male but during his trial testimony he changed this to state that he could not identify anyone in the car. He did this for the prosecution in order to put Petitioner as a possible shooter. He also stated that he only saw two people in the car. The police attempted to lead him in questioning to say that there might have been three, but in his statement he stated that there was two other people besides the victim. A close review of the record is indicative of the prosecution suppressing some evidence, and manufacturing and/or manipulating other evidence, and allowing testimony known to be false to stand uncorrected. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104. In the trial testimony of Roderick Earl Johnson, the prosecution knew that he was giving false testimony at trial, and they allowed this false testimony to go uncorrected.

In Roderick Earl Johnson's trial testimony he stated on T.Tr.P. 132 lines 12-14 he stated that he saw the victim hop out of the car, he saw a young lady step out of the

passenger side of the car and he heard another bang and saw the victim fall. Then on T.Tr.P. 133 Lines 22-27, he stated that he was unable to identify any other people in the car and went on further to state that he couldn't tell if it were a man or woman driving the vehicle. On T.Tr.P. 134 Lines 24-30, he stated that the only thing he could remember about the woman was that her head was red, unless she had on a scarf. This point was never mentioned in his initial statement to police. He claimed that she had red hair but in his initial statement he stated that she had black hair, he also stated that he saw her shoot the victim. The prosecution had him tailor his trial testimony in order to make the jury believe that Petitioner and his co-defendant had shot him and did not want the jury looking at their star witness as the actual shooter.

## ACTUAL INNOCENCE

In *McQuiggin v. Perkins*, _____ U.S. _____, ____, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013). Where Supreme Court, Justice Ginsburg, held that:

(1) plea of actual innocence can overcome habeas statute of limitations, abrogating *Escamilla v. Jungwirth*, 426 F. 3d 868, but

(2) timing is factor relevant in evaluating reliability of a petitioner's proof of innocence.

A petitioner that shows he is actually innocent, is not subject to due diligence requirements.

Then with petitioner proving of a witness's prior arrest *and of any agreement or*

15

***deal with the State*** by which a witness receives ***any benefit or gain*** in ***exchange for testimony*** is admissible to establish bias, prejudice, corruption, or interest against Defendant or party to litigation. ***LSA-C.E. Arts. 609, 609.1***. Petitioner has shown this, through evidence which proves that petitioner was deprived of his right to Due Process and Confrontation when the State withheld evidence of its agreement with a testifying witness, ***U.S. Const. Amend. 6.*** & ***U.S. Const. Amend. 14***. Petitioner asserts that the Prosecution withheld evidence and mislead the Trial Court because a deal ***was in fact made*** with Dorothy Jo Mallard & Roderick Earl Johnson ***in exchange for their testimony***. The jury should have been aware of these deals, as well as petitioner, for impeachment purposes, and for the mere fact that petitioner was entitled to the ***opportunity to cross examine*** any witness as to any deals made with the prosecution. Petitioner is entitled to a new trial based upon this material evidence being withheld. Petitioner is also entitled to a new trial based on the fact that the State failed to disclose and/or acknowledge prior to, during, and after trial that a deal was in fact made with Dorothy Jo Mallard and Roderick Earl Johnson. The Honorable trial court judge also played a part in the deal as in Tr.Tr.P.16 reads as follows:

> Mr. Adams: "yes, I do your Honor. Apparently as part of our cross examination of Ms. Mallard and our ability to impeach her to show that she's received a deal for her testimony, it comes to my knowledge that she was released some four days, after she was arrested on a fifty thousand dollar bond which was apparently set by this court, and I find myself in a position of having to question Mr. Edwards here and possibly the court as to what reason..."

16

The Court:  "you can't question me."

Mr. Adams:  "as to what reasons were given for securing a fifty thousand dollar
bond in a capital case when none is provided by law. So I am
going to have to ask this gentlemen what he told you to request that
bond and I am going to have to ask you what he told you."

The Court:  "no, you understand you cannot ask a presiding judge questions."

Mr. Adams:  "then I have to move for a mistrial, you honor."

The Court:  **"that's your problem, it's denied."**

Mr. Adams:  "can we perhaps have someone else hear this to make a
determination?"

The Court:  "No."

Mr. Adams:  "Do you have any other remedy that you might suggest to us?"

The Court:  "I see no problem to begin with, so there's nothing to remedy."

Mr. Adams:  "I see, all right, thank you."

It's a proven fact that the trial court played a role in whatever deal was given

Dorothy Jo Mallard and Roderick Earl Johnson, and when trial counsel tried to find out

about this deal he was not given the information that petitioner should have been entitled

to. This establishes bias and prejudice as a matter of law. *Martinez v. Carmana*, 95 N.M.

545, 624 P.2d 54 (1981).

The intentional act of withholding material evidence of such magnitude by the

State, combined with the intentionally covert and artful questioning of Dorothy Jo

Mallard & Roderick Earl Johnson during testimony, and the fact that Dorothy Jo Mallard

17

went to Peter McClendon's trailer just before the police executed a search warrant looking for the gun, and the fact that the officer who supposedly found the gun was not even subpoenaed to trial in violation of petitioner's confrontation rights. Dorothy Jo Mallard was seen by an eye witness shooting the victim, then she visits petitioner's trailer and right after, the gun that was involved in the murder is found in that same trailer. The petitioner had never been to the trailer in several days and had no way in the gun getting placed in the trailer. The prosecution needed evidence to show petitioner's involvement in the crime and also to take the blame from Dorothy Jo Mallard and what better way than to have Dorothy Jo Mallard plant the gun in the trailer and then leave and the police show up and they find the gun with no fingerprints. She also said at first, that she never went to the trailer, then changed her story to say that she went to the trailer but never went in. Then this Honorable Court must take into account that the prosecution never called the officer that found the gun as a witness at trial, denying petitioner his right to confront his accuser concerning the murder weapon.

Then Roderick Johnson changed his initial statement as prosecutors knew with the trial testimony of Audrey Martin, Stating that she saw Dorothy Jo Mallard shoot the victim and describe her just as Roderick Johnson did in his initial statement. Roderick Earl Johnson changed his statement at trial going from the woman had black hair, to she had red hair. He also changed about seeing the woman shooting the victim when he got out of the car just as Audrey Martin had testified to "the victim got out of the car and

18

then a woman with red hair got out of the car and that's when he was shot but he didn't see her shoot him". He additionally changed his initial statement from there were two people in the car and the driver was a bright skinned or red skinned black male that I have seen at the cab stand, and that he could positively identify him if he had a picture or if he saw him again, to I couldn't see anyone inside the car. This was all done in an attempt by the prosecution to give Dorothy Jo Mallard's testimony credibility and to take the credibility away from the eye witness, Ms. Audrey Martin.

All of this presents the epitome of prosecutorial misconduct. Combined, the presence of prosecutorial misconduct in violation of *Brady v. Maryland* and progeny cases is untenable.

## PROSECUTORIAL MISCONDUCT
### *Law and Argument*

In the present case, Petitioner avers his conviction and sentence were obtained in violation of his 5th, 6th, and 14th Amendment Rights under the United States Constitution, Louisiana Constitution of 1974, and Louisiana Statutory Law, as a result of knowing and intentional Prosecutorial Misconduct.

When presenting a claim of prosecutorial misconduct, a Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *United States v. Bagley*, 473

U.S. 667, 676, 105 S.CT. 3375, 87 L.Ed.2d 481 (1985).

In this case, the prosecution knew that the original statement and trial testimony of Audrey Martin who testified that she did in fact see a gun in the hand of Dorothy Jo Mallard, on T.Tr.page 182, Line 15:

A. "but I did see her shoot Michael" and on lines 16-17

Q. "Did she shoot him once or twice?"

A. "The gun went off twice, I don't know if the second bullet hit. I really don't know that, but I know she shot him and he fell."

Additionally, in Dorothy Jo Mallard's initial statement to police she stated that "she got out of the car when the first shot was fired, but then she states that she got back in the car". Then when Dorothy Jo Mallard was dropped off, she said she then went to the home of Felicia Green and talked about the crime all night. Then the next day when police was trying to locate her Dorothy Jo Mallard was located in the Mall, where she had gone to get her hair done. She never tried to contact police nor did she ever try to leave the scene. She said in her own words that she got out of the car but then she admits that she got back in on her own. Then once she gets dropped off, she doesn't go to police but instead, she goes to Felicia Green's house and spends the night talking about what happened and then the next day, she goes to the Mall to get her hair done. She never tried to contact police or go to the police. This doesn't appear to be a woman who was afraid for her life. Then after her arrest for First Degree Murder and Armed Robbery, she has someone from the prosecutor's office, and sheriff's department call and get her a

bond set at fifty thousand dollars, in order to do this, they would have had to inform the same trial court as to why they were asking for a bond for a person who was seen by an eye witness, shooting the victim, as nobody would ever get a bond set for these type of charges. This in itself shows that the prosecution was trying to get a witness to help seek a conviction against petitioner, and the trial court knew and played a role in this deal. The defense and petitioner should have been privileged to this deals in order to properly cross examine Dorothy Jo Mallard, and Roderick Earl Johnson.

The Supreme Court has recognized that prosecutorial misconduct may "so infect the trial with unfairness as to make the resulting conviction a denial of Due Process." *Greer v. Miller*, 483 U.S. 756, 765, 107 S.CT. 3102, 97 L.Ed.2d 618 (1987)(quoting *Donnelly v. DeChristophoro*, 416 U.S. 637, 643, 94 S.CT. 1868, 40 L.Ed.2d 431 (1974). The appropriate standard of review is the narrow one of Due Process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.CT. 2464, 91 L.Ed.2d 144 (1986).

Petitioner maintains that this case *clearly* exhibits that the Prosecutorial Misconduct presented herein so infected the trial with unfairness that he was denied Due Process, and the Misconduct was of sufficient significance resulting in the denial of a fair trial.

I.   *The Brady Rule*:

The State's failure to disclose material favorable to a criminal defendant

implicates more than the defendant's discovery rights; the prosecutor has an affirmative duty to disclose such evidence under the Fourteenth Amendment's Due Process Clause. Failure to reveal this evidence implicates the defendant's right to a fair trial. *U.S. v. Agurs*, 427 U.S. 97, 96 S.CT. 2329 (1976); *State v. Ortiz*, 567 So. 2d 81 (La.1980); *State v. Falkins*, 356 So. 2d 415 (La.1978), *certiorari. denied* 439 U.S. 865, 99 S.CT. 190 (1978).

The suppression of evidence favorable to an accused by the prosecution when requested, violates Due Process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 83 S.CT. 1194, 10 L.Ed.2d 215 (1963); *See* also, *State v. Knapper*, 579 So. 2d 956 (La.1991); *State v. Rosiere*, 488 So. 2d 965 (La.1986).

The Supreme Court clarified: there are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused; either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 119 S.CT. 1936, 144 L.Ed.2d 286 (1999).

II.    *The Three Elements of Strickler in Establishing a Brady Violation*:

(A)   Beyond debate, the first such element of *Strickler v. Greene, supra*, in establishing a Brady violation – that the evidence be favorable to the accused as exculpatory or impeaching – is evident in this case, i.e., the deal made with Dorothy Jo

Mallard & the deal made with Roderick Earl Johnson in exchange for their testimony. The above evidence is *favorable, exculpatory,* and *impeaching.* The defense requested this material in it's Motion for Discovery, only to be mislead by the prosecution. Disclosure of the above evidence to competent counsel would have resulted in a markedly weaker case for the prosecution and there is more than a 'reasonable probability' that the outcome would have been different had this evidence been presented and heard by the fact finding jurors.

(B)   Regarding the second *Strickler* component in establishing a *Brady* violation, Shaw shows cause when his failure to develop facts in State-Court proceedings was due to the State's suppression of the evidence. Nowhere in the record can it be seen that the prosecution ever mentioned any *DEALS,* and Defense Counsel's actions and/or inactions exacerbated those of the prosecution. In any event, prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police." When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. *Kyles v. Whitley,* 514 U.S. 419, 115 S.CT. 1555, 131 L.Ed.2d 490 (1995). Nowhere in the record is there *anything* to support that the prosecution ever mentioned that the deal existed with Dorothy Jo Mallard or Roderick Earl Johnson. (See: *Exhibit"C",* a copy of Roderick Earl Johnson's Original taped statement that was withheld from the defense and Petitioner.)

(C)   Coincident with the third *Strickler* component in establishing a *Brady* violation –
that prejudice ensued – prejudice within the compass of the "*cause and prejudice*"
requirement exists when suppressed evidence is "*material*" for Brady purposes. The
materiality standard for *Brady* claims is met when "the favorable evidence could
reasonably be taken to put the whole case in a different light as to undermine the
confidence of the outcome." *Kyles*, at 435. To be sure, this evidence would have put the
whole case in a different light. This evidence was *pertinent, advantageous*, and
*exculpatory* to the defense. In verity, had the fact finding jurors been presented with
evidence of extreme leniency, and the fact that all those charges were dropped and
testimony known to be false were corrected, there is more than a reasonable probability
that this would have altered the outcome of the proceedings.

Petitioner asserts the State knew of, but kept back, the deals made with Dorothy
Jo Mallard & Roderick Earl Johnson. It was incumbent on the prosecution to disclose
*Brady* material and McClendon cannot be faulted for relying on that.  See *Strickler*, 527
U.S., at 283-284, 119 S.CT. 1936.

In support, McClendon cites *State v. Bailey*, 367 So.2d 368 (La. 1979), wherein,
the State failed to disclose impeachment evidence against the State's only witness
concerning any deals he may have made with the State concerning his arrest on a other
charges  before trial. The State also failed to tell him that it had arranged for the release
of the witness *without bail* pending the trial, and then did not seek to have the witness

jailed until some days after trial when some other party complained to a magistrate. The defendant was convicted, and when he learned of these facts, he filed a motion for new trial contending that his *Brady* rights had been violated. The trial court denied the motion, and the defendant appealed. On appeal, the Court reversed the defendant's conviction and sentence, granting him a new trial.

Similarly here, the state's star witness and the only witness to put the gun in petitioner's hand, had her bond set at $50,000.00 and she had no constitutional right to even have a bond. The Court cited *Brady v. Maryland*, 373 U.S. 83, 83 S.CT. 1194, 10 L.Ed.2d 215 (1963) for the general rule that the State's failure to disclose material evidence which is favorable to the defense justifies the granting of a new trial. In addition, Roderick Earl Johnson was given a deal to change his original statement in order for the prosecution to obtain a conviction against Petitioner. The Court also cited *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972), which extended *Brady* to evidence that would damage the credibility of the State's witnesses. Quoting from *Giglio*, the Court noted:

> When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. . . Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor.

*Bailey*, at 370. The Court then quoted from *United States v. Agurs*, 427 U.S. 97, 96 S.CT. 2392, 49 L.Ed.2d 342 (1976):

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if

25

supported by evidence establishing guilt beyond a reasonable doubt.  It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance must be sufficient to create a reasonable doubt."

*Bailey*, at 370-371. The Court found that the defendant "could very probably have negated, to a considerable extent, the credibility of this important state witness" which would have created a reasonable doubt if he had been aware of the evidence which the State withheld from the Court.

In addition to the promise of extreme leniency, the prosecution gave Dorothy Jo Mallard a deal in the form of the charges of First Degree Murder and Armed Robbery were at first, reduced to Principal to First Degree Murder and Principal to Armed Robbery and then dropped. Roderick Earl Johnson had received probation after changing his original statement to police. Roderick Earl Johnson's trial testimony was totally unreliable and false. Detectives and prosecutor's knew that their testimony and statements were totally unreliable, yet the prosecution chose to allow them to testify in total conflict with the original statements in order to obtain the conviction.

As a result of the State's failure to disclose, McClendon was denied his right to present a defense, right to *adequate* cross-examination, right to *full* confrontation and a fair trial having a just and reliable outcome. The State knew of, but kept back, that it was in collusion with Dorothy Jo Mallard and Roderick Earl Johnson. McClendon  trusted the prosecution would not engage in improper litigation conduct to obtain a conviction.

Petitioner is entitled to a new trial based upon these facts.

The Court observed in *Strickler*, defense counsel has no "procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred." 527 U.S., at 286-87, 119 S.CT. 1936. "Ordinarily, we presume that public officials have properly discharged their official duties." *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.CT. 1793 (1997) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15, 47 S.CT. 1 (1926) (internal quotation marks omitted).

The Court has several times underscored the "special role played by the American prosecutor in the search for truth in criminal trials." *Strickler*, 527 U.S. at 281, 119 S.CT. 1936; *Kyles*, 514 U.S. at 439-440, 115 S.Ct. 1555; *United States v. Bagley*, 473 U.S. 667, 675, n.6, 105 S.Ct. 3375 (1985); *Berger*, 295 U.S., at 88, 55 S.Ct. 629. See also: *Olmstead v. United States*, 277 U.S. 438, 484, 48 S.Ct. 564 (1928) (Brandeis, J. Dissenting). Courts, litigants, and juries properly anticipate that "obligations [to refrain from improper methods to secure a conviction] ... plainly rest[ing] upon the prosecuting attorney, will be faithfully observed." *Berger*, 295 U.S., at 88, 55 S.CT. 629. A Prosecutor's dishonest and unwarranted concealment should attract no judicial approbation. *Kyles*, 514 U.S., at 440, 115 S.CT. 1555.

The existence of prejudice in this case is marked. It is untenable that one could conclude that Patrick McClendon received a *fair trial*, given the jury's ignorance of the fact that the State was in collusion with Dorothy Jo Mallard and Roderick Earl Johnson

27

concerning the deals made with both of the state's witnesses, and withheld the same. It cannot be said with any noticeable amount of confidence that had the jury known these facts, the verdict would have been the same.

## CONCLUSION AND PRAYER

Petitioner, Patrick McClendon, respectfully prays that this Honorable Court will accept his foregoing "Memorandum of Law in Support of Petition for Federal Habeas Corpus" pursuant to *28 U.S.C.A. § 2254*. Petitioner, contends that due to the magnitude of these Constitutional Violations and the facts presented by Petitioner in these proceedings, that his federal habeas corpus should be granted and that his underlying state conviction and sentence should be vacated, and set aside.

Respectfully submitted,

Patrick McClendon #106727

## CERTIFICATE OF SERVICE

I, Patrick McClendon #106727, hereby certify that a true and correct copy of the forgoing has been served upon the Respondent herein, through the Office of the District Attorney, Parish of Washington, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper, first-class postage pre-paid, this 23rd day of May, 2014.

Patrick McClendon